## WESTERN UNION TELEGRAPH CO. v. GRAHAM. (No. 779.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 17, 1922.)

**1. Pleading ☞240—Trial amendment dictated to stenographer during trial becomes pleading, though not formally filed.**

Plaintiff's trial amendment, objected to by opposing counsel, who agreed with plaintiff's counsel that, if permitted to be filed, it might be dictated to the official stenographer, becomes a pleading when so embodied in the record, though never reduced to form and filed with the clerk.

**2. Telegraphs and telephones ☞65(1)—Allegation held to show agency for telegraph company.**

An allegation that the telegram in question was "handed to the operator" by the party attending to the sending, who gave "the agent" named instructions concerning delivery, *held* to show that the person named was the telegraph company's agent.

**3. Appeal and error ☞273(2)—Objection to trial amendment not available on appeal in absence of special exception.**

In the absence of a special exception, defendant cannot prevail on appeal in an objection to a trial amendment that it lacks definiteness.

**4. Pleading ☞236(3)—Trial amendment allowable after announcement of ready and trial partly proceeded with.**

Notwithstanding Rev. St. art. 1824, enacting that amendments must be filed before the parties announce ready for trial, the trial judge, where not abusing discretion or prejudicing the opposite party, may invoke district and county court rule 27, and allow a trial amendment, though after announcement of ready and trial partly proceeded with.

**5. Telegraphs and telephones ☞68(5)—Telegram held not to import notice of mental anguish.**

A telegram reading "Come at once" contains nothing to inform the telegraph company that addressee would suffer mental anguish in consequence of delayed transmission.

**6. Telegraphs and telephones ☞67(5)—Damages limited to natural consequences.**

Damages recoverable for failure to deliver a telegram are limited to the natural consequences of the breach of the contract, as contemplated by both parties.

**7. Telegraphs and telephones ☞65(1)—Allegation of notice to company essential to recovery for mental anguish.**

An allegation of delayed delivery of a telegram not on its face indicating its importance will not support recovery for mental anguish in the absence of an allegation that the telegraph company was informed of its importance.

**8. Pleading ☞245(4)—Error to admit trial amendment, though principal witness upon new issue raised was at trial and could testify.**

In an action against a telegraph company, where plaintiff's petition lacked the essential allegation that defendant's receiving agent knew the importance of plaintiff's telegram, and plaintiff was not surprised on trial, it was reversible error to admit, after argument, and over defendant's objection, plaintiff's trial amendment containing such allegation, notwithstanding defendant's receiving agent attended the trial and could testify.

**9. Appeal and error ☞257—Continuance not reviewed in absence of exception, though motion is not in writing and verified.**

Defendant's right to a continuance to meet new issues raised by plaintiff's trial amendment cannot be resisted on appeal because defendant's motion therefor was not written and verified, where plaintiff saved no exceptions on that point, but, on the contrary, the court refused a continuance while assuming defendant's agent, attendant upon trial, could be used as its witnesses successfully to combat the new issues.

**10. Pleading ☞245(1)—Amendments should be filed in time to allow adversary to meet new issues.**

An amended pleading should be filed in time to afford the adversary reasonable opportunity to make investigation to meet new issues.

**11. Appeal and error ☞285—Regardless of motion for new trial, permitting of trial amendment is reviewable.**

When the record contains a trial amendment and the court's action admitting it, assignment of its admission is reviewable separately from and without being complained of in appellant's motion for new trial, and hence

it is immaterial that the motion for new trial, though consequent upon refusal of continuance to meet new issues raised by the trial amendment, did not disclose appellant could get further evidence on the new issues.

**12. New trial ⚖➞124(1)—Motion held sufficient though not showing that grant of motion would change result.**

Where motion for new trial complaining of denial of continuance after trial amendment had to be filed two days after trial, *held*, under the facts, that the motion was not insufficient because not stating that evidence could be procured which would change the result, regardless of fact that motion might be amended.

**13. New trial ⚖➞152—Motion may be amended by leave.**

Motion for new trial may be amended by leave of court.

**14. Telegraphs and telephones ⚖➞70(1)— Amount of recovery for grief and disappointment left to jury's judgment.**

Recovery is allowed for grief and disappointment as elements of mental anguish, suffered from negligent failure to deliver a telegram, but there is no fixed criterion for measuring such compensation, other than leaving it to the fair judgment of a jury or trial court.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Action by Mae Graham against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Judgment reversed, and cause remanded.

F. J. & C. T. Duff, of Beaumont, for appellant.

E. B. Pickett, Jr., of Liberty, for appellee.

HIGHTOWER, C. J. This was a suit by the plaintiff, Mae Graham, represented by her mother, Mrs. Minnie Graham, as next friend, against the Western Union Telegraph Company, as defendant, to recover damages because of mental anguish claimed to have been suffered by plaintiff in consequence of the alleged negligent failure on the part of the defendant to transmit and deliver to her a telegraphic message. A trial before the court without a jury resulted in a judgment in the plaintiff's favor for $1,500, from which judgment the Western Union Telegraph Company has prosecuted an appeal to this court, assigning several grounds of error upon which it is insisted the judgment should be reversed. These claimed errors relate to the sufficiency of the plaintiff's pleading to warrant the judgment in her favor, and to the action of the trial court in permitting her to file a trial amendment after the cause had proceeded to trial, and to the action of the court in overruling appellant's motion for a continuance, after the trial amendment had been permitted, and to the judgment itself as being excessive.

At the time the message in question was delivered to appellant's agent for transmission to appellee, appellee's mother was living at Cleveland, in Liberty county, Tex., and appellee, a young lady of about 18 years of age, was working as operator in a telephone office at the little town of Hull, in said county, where she had been employed for a period of some two months. Up to the time she took the position as operator at Hull, appellee lived with her mother at Cleveland. On Sunday, September 19, 1920, a little brother of appellee, about two years of age, who was with its mother at Cleveland, became seriously ill, and at about 4:10 p. m. on that day plaintiff's mother sent and caused to be delivered to appellant's local operator at Cleveland a telegraphic message directed to appellee at Hull, as follows:

"Cleveland, Tex. 4.10 P. M. Sept. 19, 1920.
"Mae Graham, Hull, Texas. Come at once.
"H. F. Tanner."

H. F. Tanner, whose name appears signed to the message, was the person by whom Mrs. Graham, appellee's mother, sent the message to appellant's operator at its Cleveland office, and Mr. Tanner was acting for the benefit of appellee in so handling the message.

Appellee alleged in her original petition, substantially, that at the time of the delivery of the message to appellant's Cleveland agent for transmission to her her baby brother, Winslow Graham, two years of age, was seriously and dangerously ill at the home at Cleveland, and that there was little hope of his recovery; that defendant's charges for transmission and delivery of such message were paid by appellee's mother, but that the message was not delivered to plaintiff until the following morning, September 20th, about 9:15 a. m.; that appellee had but recently gone from her home at Cleveland to Hull, and that her little brother was very much attached to her, and she devoted to him; that her little brother died on the morning of September 20, 1920, at 4:40 o'clock, and before appellee reached Cleveland in response to the message; that, if the message had been properly and promptly delivered to appellee, she could and would have reached her home at Cleveland, where the little brother was sick, before his death; that by the use of reasonable and proper diligence appellant could have delivered the message to her in time for her to have left Hull and to have arrived at Cleveland at about 10:30 o'clock on the night of September 19, 1920, but that the appellant negligently failed to deliver the telegram to her until the next morning, as stated, and that, by reason of such negligence, appellee "was prevented from being present at the bedside of her said baby brother before he died, and denied the opportunity of being there to administer to him and wait upon him in his last hours, and

⚖➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by reason and in consequence thereof she has suffered the most severe disappointment and great grief, and much mental pain and anguish, in all to her damage in the sum of $2,500." The prayer was:

"Wherefore, plaintiff prays that defendant be cited to appear and answer this petition, and that on final hearing she have judgment against the defendant for her said damages in the sum of $2,500, for costs of suit, and all other and further relief, both legal and equitable, general and special, to which she may be justly entitled."

There was no allegation in appellee's petition to the effect that any information or notice whatever was given to appellant's Cleveland agent, at the time of the delivery to him of the message in question, that the purpose of the message was to inform appellee that her little brother was sick at Cleveland, or that the message was sent for appellee's benefit in order that she might come home and be with the brother. Neither was it alleged anywhere in the petition that appellant's Cleveland agent knew that the little brother was sick, or that he knew the purpose of the message; and there was nothing alleged in the petition to show that appellant's Cleveland agent had any reason to believe, at the time of his receipt of the message, that it related to any sickness in appellee's family, or that appellee would probably be caused to suffer any mental anguish or disappointment in the event the message should not be properly and promptly delivered, other than what was contained on the face of the message itself, as we have copied it above.

Appellee's original petition was filed on January 29, 1921, and in answer to same appellant filed a general demurrer and general denial. The record does not disclose that any further pleading was filed by either party, except a trial amendment filed by the appellee, which we will refer to hereinafter. Upon the pleadings as stated, both parties announced ready for trial on August 25, 1921, and a jury was waived and the case submitted to the court. Appellee's attorney thereupon proceeded to introduce evidence in behalf of his client, and concluded the same, and rested the appellee's case. Counsel for appellant introduced no evidence, but also announced that the defendant rested. Thereupon appellee's counsel proceeded to argue the case to the court, and fully concluded his argument, and he was then followed by counsel for appellant, who concluded his argument also. Thereupon, and before the court had announced his decision, appellee's counsel requested the court to permit him to file a trial amendment. The request was oral, and was as follows:

"We ask leave to file a trial amendment, and will dictate it right now or afterwards, setting up that, when Mr. H. F. Tanner, the person who attended to the actual sending of this message from Cleveland, handed it to the operator at Cleveland on the date in question, he informed said operator that it related to the illness of the brother of Miss Mae Graham, the little baby boy then dangerously ill, whose recovery was doubtful, and the object of sending it was to give Miss Mae Graham an opportunity to arrive home before the baby's death; that he further stated, told the agent McPhearson at Cleveland that this Miss Mae Graham was telephone operator at Hull, and could be found about the time this message reached there in all probability at the telephone office; that her hours of work required her to be on duty; and that information was imparted to the agent at the time this message was delivered for transmission and paid for by Mr. H. F. Tanner."

Thereupon counsel for defendant objected to the filling of the trial amendment, as offered by counsel for appellee, on the grounds, mainly: (a) That no reason was stated or shown by counsel for appellee that would authorize the court to permit him to file such amendment; (b) that there was no showing or statement by counsel for appellee in his request to file that he or his client had been misled in any way by any witness who had gone on the stand or had been in any manner surprised by any evidence adduced at the time the parties had closed the case; (c) that there was no statement or showing on the part of counsel making the request why the facts set up by the offered amendment had not been pleaded before, nor even was it claimed or shown by counsel for appellee that he or the appellee was not fully aware and knew of the facts alleged in the trial amendment in time to have pleaded them properly before announcement of ready, and therefore that the request to file the amendment showed nothing acquitting the appellee or her counsel of neglect or laches in offering the amendment; (d) that the amendment, as offered, set up an entirely new and different cause of action and new and different issues in the case, and, if the same should be permitted to be filed, would entirely change the rules of law applicable to the case between the parties; (e) that appellant had not had an opportunity to investigate the case as would be made by the filing of the amendment, and had not and would not be prepared to make its defense against the new allegations that would be brought in by the amendment. Thereupon the following took place between counsel for appellant and the court:

"Counsel for Appellant: Your honor, we cannot agree to that trial amendment. This case was brought on one theory and we answered it on that theory, and if they are allowed to bring another suit, an entirely different contract, an entirely different agreement as to the telegram, we are not prepared to meet it now.

"The Court: What do you claim—surprise?"

"Counsel for Defendant: Yes, sir."

"The Court: "Go ahead; it is overruled, because the party who sent it is present in court."

Thereupon counsel for defendant excepted to the ruling of the court in permitting counsel for appellee to file the offered trial amendment, the contents of which we have shown above, and saved a full bill on the point, which was approved by the court without qualification. Thereupon counsel for appellant orally requested the court to continue the cause until the next term, stating to the court that appellant was not ready to meet the new cause of action and new issues brought into the case by the trial amendment, and needed time to investigate and prepare to meet the case as made by the trial amendment. This oral motion or request was refused by the court, and its action in that connection is here complained of by appellant.

The trial amendment offered by appellee, and which the court gave him permission to file, containing the allegations of fact as we have shown them above, was never, in fact, reduced to writing and filed with the clerk, but the contents of the amendment, as we have stated them, were dictated to the official stenographer, and in that way the amendment appears in this record.

After the permission to file the trial amendment had been granted to appellee's counsel, Mr. H. F. Tanner, who had already been on the witness stand, and testified fully relative to the allegations contained in appellee's pleading up to the time of the trial amendment, was recalled to the witness stand by counsel for appellee, and again testified fully in support of the allegations of fact contained in the trial amendment. The witness stated, substantially, that at the time he delivered the message in question to appellant's Cleveland agent he informed said agent of the purpose of the message, and stated to the agent that Miss Mae Graham's little baby brother was very dangerously sick, and that he probably stated to the agent that the little brother was expected to die, and that the purpose of the message was to advise Miss Mae Graham of the condition of her little brother, so that she might come home, and that he stated to the agent that he wanted the message sent immediately, so that appellee would get it before 6 o'clock on that evening, in order that she might take a train coming by Hull at that hour, and thereby be enabled to reach home that night. He further testified, substantially, that he told the appellant's Cleveland agent that Miss Mae. Graham was working as telephone operator at Hull, in the telephone office, and that she might be found at that office, and the message there delivered to her. After this evidence of Mr. Tanner in support of the trial amendment, counsel

for appellant again orally requested the court to let him withdraw his announcement of ready, and to continue the case until the next term, stating to the court that the request was made in order that appellant might be able to fully investigate the new matters that were for the first time set up by the trial amendment, and to prepare to meet appellee's case in full, but this request and motion was by the court overruled, the court's reason for his action, as stated by the bill on the point, being that the appellant's Cleveland agent, who had received the message for transmission, was then in the courtroom, and might testify in behalf of appellant as to the new matter set up by the trial amendment. To this ruling of the court counsel for appellant also excepted. Appellant's counsel thereupon called to the witness stand the Cleveland agent, J. C. McPhearson, who testified, substantially, that at the time the message in question was delivered to him by Mr. Tanner nothing was said by Mr. Tanner informing him of the purpose for which the message was sent, and that he was not told by Mr. Tanner anything about appellee's little brother being sick, and that he did not know that the little brother was sick, and did not know the purpose of the message, and that, in fact, nothing was said to him by Mr. Tanner regarding the purpose of the message.

This concluded the trial below, and thereupon the court rendered judgment against appellant in the sum of $1,500, as we have shown above. We do not mean to say that there was no other testimony introduced than that of Tanner and the agent, McPhearson, but we mean that what we have stated with reference to the testimony of Tanner and McPhearson that the same concluded the trial as to the matters set up in the trial amendment.

[1] We shall first dispose of appellant's contention that there was no basis in the pleading for the judgment in this case. This contention is based upon the assumption that appellee's original petition was the only pleading that she had in the case. This contention must be overruled. This assumption is made by appellant because the trial amendment which appellee was given permission to file was never, in fact, actually reduced to form and filed with the clerk but was only dictated to the official stenographer, as above shown, and therefore appears only in the statement of facts, instead of the transcript. We find in the record, however, a written agreement between counsel for both sides, showing, substantially that, while the trial amendment was objected to and opposed by counsel for appellant, yet it was agreed between the counsel for both sides that, if the trial amendment, as offered, should be permitted to be filed, that then it might be dictated to the stenographer, and the neces-

sity for formally filing it with the clerk would be waived. We shall therefore treat the trial amendment as a part of the pleadings in the case, and, being so treated, the pleadings, as a whole, are sufficient as a basis for the judgment.

[2, 3] It is next contended by appellant that, even conceding that a formal filing of the trial amendment was not necessary to give it a place as a part of the pleadings in the case, yet that the same was insufficient because it does not definitely and clearly appear therefrom that Mr. McPhearson, to whom the message was delivered at Cleveland, was appellant's telegraph operator to whom the message should have been delivered, and who was authorized to act for appellant in receiving it. We overrule this contention, for the reason that we think that it does appear with reasonable certainty from the trial amendment that the Cleveland agent was appellant's telegraph operator, and was authorized to act for appellant in receiving the message. If, however, this be not so, and appellant desired a more definite showing by the trial amendment that the agent who received the message at Cleveland was its telegraph operator, and was authorized to receive the message and to bind appellant by his action, this should have been pointed out by a special exception, which was not done.

[4] The next contention is that the trial court's action in permitting appellee to file the trial amendment was clearly erroneous, for that the parties had theretofore announced ready for trial, and had actually gone into the trial of the case, and that therefore there was no authority in the trial court to permit the filing of the trial amendment. It is provided by article 1824, Revised Statutes:

"All amendments to pleadings * * * must * * * be filed under leave of the court * * * before the parties announce ready for trial, and not thereafter."

Rule 27 (142 S. W. xix) for the district and county courts provides, substantially, that, when exceptions to pleadings have been presented and decided, the trial court may grant leave to either party to a suit to file an amendment. etc. Rule 27, 142 S. W. xix.

In the case of Petty v. Lang et al., 81 Tex. 238, 16 S. W. 999, it seems to have been held by the Supreme Court of this state, speaking through Judge Henry, that article 1824, Revised Statutes (then article 1192), is mandatory. Speaking to the point, Judge Henry said:

"In view of the statute on the subject (Rev. Stats. art. 1192), reading, 'The pleadings may be amended under leave of the court upon such terms as the court may prescribe before the parties announce ready for trial, and not thereafter,' the permission to amend was an error."

In that case, however, the court reached the conclusion that the error in that case was not reversible because the trial amendment added nothing to the pleading as it stood before.

In Radam v. Microbe Destroyer Co., 81 Tex. 122, 16 S. W. 990, 26 Am. St. Rep. 783, our Supreme Court again had occasion to construe article 1824, (then article 1192), and also rule 27. Among other things it was said:

"After sustaining certain exceptions to the answer, a trial amendment was the proper technical pleading in order. Rule 27 for district court. But the rule is not absolute where no injury is done the other side. The court has the power to relax the rule in the interest of justice. The Revised Statutes provide that pleadings may be amended under leave of the court before the parties announce ready for trial, 'and not thereafter.' Rev. Stats. art. 1192. Yet it has been held that, after such announcement, the court may allow amendments that may seem necessary to the ends of justice."

In Telegraph Co. v. Bowen, 84 Tex. 476, 19 S. W. 554, our Supreme Court, speaking through Judge Gaines, held that article 1824, above quoted, was not mandatory, and concluded that the action of the trial court in that case in permitting a trial amendment after announcement of ready was not reversible error. Among other things it was said:

"The trial judge has a sound discretion in regard to the conduct of a trial, and it should always be exercised so as to attain the ends of justice. The plaintiffs were not even guilty of laches. When the telegram was delivered for transmission it passed into the possession of defendant, and there remained until the day of trial. It was quite probable that they should make a mistake as to so unimportant a matter as the name which was signed to the message. They clearly had the right when the telegraph was produced to claim surprise and withdraw their announcement so as to amend. * * * And such being their right, why should they be required to go through the formality of withdrawing the case and reintroducing the evidence that had already been produced? In either event the defendant would have been entitled to a continuance by showing that it was not prepared to meet the case made by the amendment. No application for continuance was made."

In the case just quoted from, the plaintiffs were members of a business firm, and a business telegram had been sent which was signed by one of the individual members of the firm in his own name. The original pleading had alleged that the telegram was signed by the firm. Upon the trial, the defendant telegraph company produced message, and the variance as to the name signed to it appeared. The plaintiffs offered it in evidence notwithstanding the variance, but on that ground the defendant objected,

and the objection was sustained. Thereupon the plaintiffs asked leave to file a trial amendment correcting the pleading only by showing that the message was signed by one of the individual members, and not by the firm, as alleged before. This leave was granted by the court, over the objection of the defendant. The defendant in that case did not even claim surprise, and could not have done so, nor did it ask for a postponement or continuance, and the Supreme Court held, upon such state of facts, that there was no error in permitting such an unimportant amendment.

In Kenedy Pasture Co. v. State (Tex. Civ. App.) 196 S. W. 287, the Austin court, speaking through Justice Jenkins, held that pleadings may be amended after parties announce ready for trial, notwithstanding article 1824, Revised Statutes, which requires that such pleadings must be filed "before the parties announce ready for trial, and not thereafter." It is very clear, however, from the opinion in that case, that the court, had the question been one of first impression, would have held article 1824 to be mandatory. And in Ames Portable Silo & Lumber Co. v. Gill (Tex. Civ. App.) 190 S. W. 1130, Southwestern Portland Cement Co. v. Bustillos (Tex. Civ. App.) 216 S. W. 268, and a number of other cases by our Courts of Civil Appeals, it was held that article 1824 is not mandatory, and that the trial court may, in the exercise of a sound legal discretion, permit trial amendments after announcement of ready by the parties, and after the trial may be commenced, where to do so would seem necessary to the ends of justice, and would not be prejudicial to the other party.

Considering all of the authorities cited above, and others, we hold that a trial judge may, in the exercise of a sound legal discretion, permit the filing of a trial amendment by either party to a cause after announcement of ready has been made, and, even after the trial is partly proceeded with, where it is necessary to attain the ends of justice, and the other party may not be prejudiced by permitting such amendment.

[5] Appellant's next contention is that, even if the trial court is vested with the discretion to permit the filing of a trial amendment after announcement of ready by the parties in any case, that, nevertheless, the trial court in this case abused such discretion, and erroneously permitted the filing of the trial amendment here, to the prejudice of appellant. After giving this contention careful consideration, we have reached the conclusion that it must be sustained. We have already shown that appellee's petition in this cause set forth in hæc verba the message in question. The message addressed to appellee was: "Come at once." There was nothing on the face of this message to notify or inform appellant's agent at Cleveland, who received it, that appellee would probably suffer any mental anguish in consequence of a failure to promptly transmit and deliver the message to her. Western Union Telegraph Co. v. Kibble, 53 Tex. Civ. App. 222, 115 S. W. 643.

[6] It is now well-settled law by the decisions of this state that damages that may be recovered for failure to deliver a message are such only as are shown to be the natural and probable consequences of the breach of the contract between the parties, as contemplated by them both at the time of making the contract. Western Union Telegraph Co. v. Kibble, supra, and authorities there cited. In the Kibble Case, the opinion which was by Justice Reese, of the Galveston Court, and in which the Supreme Court of this state denied writ of error, the message under consideration was sent from Huntsville, Tex., to the plaintiff at Navasota, Tex., and, eliminating the names of the parties the message, read: "Come at once." The plaintiff was Kibble's wife, and Kibble was dangerously sick at Huntsville, and the message was sent to the wife for the purpose of having her to come to her sick husband at once. The message, it was claimed by the plaintiff, was not promptly delivered to her, and, in consequence of such failure on the part of the telegraph company, she did not learn of her husband's serious illness and death in time to reach Huntsville while he was alive, and she claimed damages for mental anguish sustained in consequence of that fact. Upon a trial she recovered damages in the sum of $750 as for mental anguish suffered by her. On appeal to the Galveston Court, the judgment was reversed and rendered in favor of appellant as to that portion of the damages which was awarded for mental anguish, but was affirmed in favor of the plaintiff for 25 cents, which was the cost of the message. The message in the case at bar reads exactly like the message in the Kibble Case, "Come at once." There was no pleading on the part of the plaintiff in the Kibble Case to the effect that any information or notice, other than the face of the message itself, was given to the receiving agent of the telegraph company as to the reason for sending the message in that case. Judge Reese, speaking for the Galveston Court, among other things, said:

"Outside of the terms of the message, it was shown that, when it was presented to the agent, he was requested to send it at once. No information of the subject of the message was given to the agent further than such as was to be gained from the message itself. The request to send it at once added nothing to what was contained in the face of the message, so we have nothing except the language of the message, by which appellant was advised that the addressee was requested to 'come at once' to Huntsville. This was insufficient to inform appellant that mental distress of any character whatever would probably or possibly result to appellee from failure to promptly

transmit and deliver the message. With regard to the rule in such cases, it is said in Ikard v. W. U. Tel. Co. (Tex. Civ. App.) 22 S. W. 534: 'It is too well settled to require citation of authorities that the special damages recoverable in actions of this character are limited to such as may reasonably be presumed to have ,been in contemplation of the parties at the time the contract was made.' As said by Justice Williams of this court in W. U. Tel. Co. v. Kerr, 4 Tex. Civ. App. 286, 23 S. W. 564: 'Our Supreme Court in this class of cases has restricted the damages recoverable to such as were within the contemplation of the parties. The rule thus enforced is a 'conservative one, intended to leave it within the power of parties making contract to form such estimate of the consequences of the failure to perform.' 'The rule of damages recoverable for the nondelivery of a telegraph message is the natural and necessary consequences of the breach of the contract as contemplated by the parties.' W. U. Tel. Co. v. Smith (Tex. Civ. App.) 26 S. W. 218. Not as contemplated by one of the parties, but as contemplated by both parties. We think this is in accord with the settled law as laid down by our Supreme Court"—citing many authorities.

[7] So it seems too clear for argument that the appellee's petition in this case up to the time the trial amendment was filed showed no cause of action for mental anguish or grief, and it was for that alone that she prayed in her petition for a judgment in the sum of $2,500. Up to the time the trial amendment was filed in this case, appellee, under the law of this state, could not have recovered one cent for the cause of action, or claimed cause of action, as set forth in her petition, but, when the trial amendment was filed, alleging, substantially, that, at the time the message in question was delivered to appellant's Cleveland agent, and the contract entered into for the transmission and delivery of the message to appellee, appellant's agent was informed of the serious illness of appellee's little brother, and that the message was being sent to appellee for the purpose of notifying her of such serious illness, so that she might come home and be with her little brother, a serious and important issue of fact was thereby brought into the case, and the appellant was thereby confronted with an important and dangerous cause of action, upon the trial of which she might have recovered, under the pleading as it then stood, all she prayed for, $2,500, and upon which she did, in fact, recover $1,500. The original petition as the record shows, had been on file since January 29, 1921, and the case was called for trial August 25, 1921, and if any amendment, which the record does not reflect, had been made by appellee prior to the calling of the case for trial, nothing was said in it about any information being given to appellant's receiving agent at Cleveland as to the purpose of sending the message to appellee. Appellant's counsel presumably had gone to court to try the case as made against appellant by plaintiff's original petition, and as the case then stood, at the time of announcement of ready by both sides, and during all the time from the filing of the petition up to the trial, there was no cause of action asserted against appellant for anything more, at the most, than nominal damages—the cost of the message—and even that was not stated or prayed for by the petition.

[8] There was no reason, up to the time the trial amendment was filed, for appellant to make any preparation with the view to defeating recovery by the appellee, other than to acquaint the court, if necessary, with the law by which the rights of the parties were governed. But, after the trial amendment was filed, as stated before, appellant was confronted with an important fact issue, if not an entirely new and dangerous cause of action, and it was then challenged, for the first time, by any pleading on the part of appellee, to offer and make a defense, if it could, to a substantial cause of action. In requesting the filing of the trial amendment, counsel for appellee stated no reason why he had delayed so long in pleading the important facts set up in the trial amendment; even did not explain or state that appellee or her counsel were not aware of these facts all the while, and did not state or attempt to show any surprise whatever by reason of anything testified on the witness stand after the case had been closed on the original pleading. How could there be any wonder that counsel for appellant was surprised when this trial amendment was offered? But the court, after asking appellant's counsel if the offered amendment surprised him, and having an affirmative reply, said: "Go ahead; it is overruled (meaning appellant's objection to the filing of the amendment), because the party who sent it is present in court." It is very clear, from this action and expression of the court, that he assumed that, because appellant's Cleveland agent, who received the message in question for transmission, was present, appellant needed no further preparation for its defense against the cause of action, now for the first time made by the trial amendment, and therefore overruled the objection, and reopened the case upon an issue of fact now dangerous to appellant, notwithstanding appellant's counsel was repeatedly stating and explaining to the court that the filing of the amendment would necessitate time in which to make a thorough investigation in order to meet the new cause of action and issues brought in by the trial amendment as to all of its phases. It is very clear that appellant was in no manner responsible for or chargeable with the situation at the time the question of the trial amendment arose, and we feel sure that the trial court in this instance abused its discretion in permitting the trial amendment to be filed, and we so hold.. Petty

v. Lang, 81 Tex. 238, 16 S. W. 999; Jackson v. Blair (Tex. Civ. App.) 165 S. W. 522; Kimbrell v. Chase (Tex. Civ. App.) 170 S. W. 861; Bender v. Bender (Tex. Civ. App.) 187 S. W. 735.

In Jackson v. Blair, supra, the plaintiff was permitted to file a trial amendment after the parties had proceeded to trial, over the objection of the defendant. It was held by the El Paso Court, speaking through Chief Justice Harper, that the action of the court was an erroneous abuse of his discretion. Among other things it was said:

"In the matter of allowing amendments to pleadings, pending a trial, to meet the proof, the courts of the state have established the rule (interpreting that portion of article 1824, Rev. Civil Stat. 1911, which reads: 'All amendments to pleadings * * * must * * * be filed under leave of court * * * before the parties announce ready for trial') that the trial judge should allow the amendment, if it appears that the new matter to be pleaded was not known to the party when he filed his pleadings, and that it raises no new issue in the case, and that, to meet the ends of justice, the amendment is necessary. Gwinn v. O'Daniel et al., 5 Tex. Civ. App. 112, 23 S. W. 850. It cannot be said that plaintiff did not know about the new matter pleaded, and that it raises a new issue there can be no question, so it was error for the trial court to permit the trial amendment to be filed."

In Kimbrell v. Chase (Tex. Civ. App.) 170 S. W. 861, the trial court, over the objection of the defendant in that case, permitted the plaintiffs to amend after announcement of ready and the trial commenced, and the Dallas Court of Civil Appeals, speaking through Chief Justice Rainey, held that the action of the trial court in permitting such amendment was an abuse of discretion, even though article 1824, Revised Statutes, be not mandatory, but only directory. In that case, the plaintiff, as survivor in community of her deceased husband, sued the defendant on a contract for the sale of land. Among other things, defendant's answer contained an allegation which was, in substance, that the contract for the sale of the land had been canceled by a written contract between himself and the deceased husband during his lifetime. This answer, containing this defensive matter, had been on file more than two months before the trial, and upon call for trial the plaintiff orally moved for a continuance, which was overruled, and thereupon the defendant announced ready, but the plaintiff asked leave of the court to amend, the amendment consisting of a plea of non est factum as to the instrument pleaded by defendant as a cancellation of the original contract, and the plaintiff further alleged in the amendment incapacity, physically and mentally, of her husband to make the contract of cancellation. The trial court granted, over defendant's objection, leave to file

the amendment, and defendant excepted. On appeal from a judgment against him in the lower court, the action of the trial court in granting plaintiff permission to so amend at the time and under the circumstances was assigned as error. The appellate court, in disposing of the assignment, among other things, said:

"The contention is that article 1824, R. S. 1911, requires all pleadings to be filed before announcement of ready for trial, and not thereafter, and that said statute is mandatory, and that the filing of said plea was in violation of law and not permissible. In construing this article our courts have not treated it as mandatory, but as giving to the trial judge a large discretion in the conduct of a trial, but this discretion should always be exercised so as to attain the ends of justice. Telegraph Co. v. Bowen, 84 Tex. 476, 19 S. W. 554; Fidelity & Casualty Co. v. Carter, 239 Civ. App. 359, 57 S. W. 315.

"In the case of Telegraph Co. v. Bowen, supra, a ruling permitting the plaintiff to file an amendment after trial had begun was made, but in that case the plaintiff was held not guilty of laches in not filing it sooner. We cannot say as much in this case for plaintiff. On November 17th, Kimbrell filed his answer, setting up a written agreement between him and plaintiff's husband canceling said contract for the sale of land, and plaintiff's amendment pleading non est factum was filed January 30th following. Under these circumstances we think the amendment came too late. It is true if the defendant had asked for it, he would have been entitled to a continuance on such terms as the court might impose as to costs, etc., but not having done so, and appellant not having made a legal showing for a continuance in the first instance, she should not have been permitted to file the amendment and place upon defendant the necessity of applying for a continuance."

In the case before us, appellee's petition had been on file since January 29, 1921, and the trial, as we have shown, was had on August 25th following. No reason whatever was offered by appellee for her failure to file an amendment alleging the facts set up in her trial amendment sooner than she did. Such being true, and the matter being set up in the trial amendment for the first time after the parties had announced ready for trial, and practically concluded it under appellee's original petition, it was a clear abuse of the trial court's discretion to permit the filing of the amendment.

In Bender v. Bender (Tex. Civ. App.) 187 S. W. 735, after the parties had announced ready and after the trial had proceeded to some extent, the plaintiff asked leave to file a trial amendment attacking the contract upon which the defendant relied in that case for fraud. The trial court refused to permit the trial amendment, and error was assigned on that action. The Galveston Court, speaking through Justice Lane, among other things said:

"It was not intended by the rule allowing the filing of trial amendments that an amendment so filed might be made as a matter of right so as to include amendments setting up new causes of action or new defenses not pleaded or set up in some former plea, and which might cause a reopening of the case after proceeding to trial."

See, also, Johnson v. Sunshine Oil Corporation (Tex. Sup.) 243 S. W. 455.

Applying the several authorities above cited to the facts in this case, as we have stated them, relative to the time and conditions under which the trial amendment was permitted to be filed, we have no doubt that the trial court's action in that regard was an abuse of the sound legal discretion vested in him, and that the same constitutes reversible error in this case.

[9] The next contention made by appellant is that the trial court, after permitting appellee to file the trial amendment, was in error in declining and refusing to permit appellant to withdraw its announcement of ready and to continue the case in order that it might have time to prepare its defense to the cause of action and issues brought into the case by the trial amendment. Appellee's answer to this contention is that the court's action was not erroneous because appellant's motion was not statutory, in that it was not reduced to writing and properly verified, but was only an oral motion, and therefore it was addressed to the sound discretion of the trial judge, and his action in overruling it should not be reversed by this court. We think that the opinion in Kimbrell v. Chase, supra, is a sufficient answer to appellee's contention here. Appellee, as we have shown above, stated no reason why she should be permitted to file the trial amendment at the time it was offered, and she should not have been permitted to file it and place the burden and necessity upon appellant, who was not at fault, of even asking for a continuance. Aside from that, however, we think that appellee is in no better position to urge the contention that the motion to withdraw announcement and continue the case by appellant was not in writing and properly verified and filed than appellant is to insist that there was never, in legal contemplation, any trial amendment filed in this case. As we have shown above, appellee's trial amendment, as we have treated it, was never reduced to writing and formally filed in this case, as required by the rule, but the parties themselves and the court treated the trial amendment as having been properly reduced to writing and formally filed as a pleading in the case. And, as to appellant's motion to withdraw its announcement and continue, it is very clear from the two bills of exception on that point that there was no objection raised to the motion on the ground that it was not in writing and verified and properly filed, but, on the contrary, it is clearly disclosed by the record that the court refused appellant's motion for the reason that its Cleveland agent, McPhearson, was present in the courthouse at the time the motion was urged, and the court, in effect, said to appellant's counsel while urging the motion, "I see the defendant's agent, McPhearson, who received the message, here in the courthouse, and he can furnish all the evidence you need to meet the new matter set up by the trial amendment, and you do not need any further time for preparation to meet such matters," and overruled the motion. Manifestly the court, in taking that action, assumed that, because appellant's Cleveland agent was present, and could deny that any information or notice was given him by Mr. Tanner at the time the message was delivered to McPhearson as to the purpose of the message, there could be no reason for declining to proceed with the trial, and that appellant would not be able to procure further evidence, direct or circumstantial, that would defeat or tend to weaken appellee's case in any of its phases.

[10] We hold that the trial court was not authorized to so assume, but, on the contrary, that appellant, after the trial amendment was filed, was entitled to a reasonable time in which to prepare its defense to appellee's cause of action in all of its phases, as made by the trial amendment, construed in connection with and aided by her other pleading. Railway Co. v. Groner, 100 Tex. 414, 100 S. W. 137; Railway Co. v. James (Tex. Civ. App.) 190 S. W. 1136; Horwitz v. La Roche (Tex. Civ. App.) 107 S. W. 1148; Railway Co. v. Smith, 9 Tex. Civ. App. 450, 29 S. W. 186; McWhorter v. Estes (Tex. Civ. App.) 175 S. W. 846. Certainly, the law contemplates that an amended pleading of either party to a litigation should be filed at such time as will afford the adversary a reasonable opportunity to make investigation, with the view to meeting, if he can, any new cause of action or material issue which is an element of it. Any other rule would be at once confusing and unfair.

In Railway Co. v. Groner, supra, the plaintiff, Groner, filed a suit against the railway company for damages because of personal injuries to his wife while a passenger on the defendant's train. It was shown by the plaintiff's petition that the injuries received by the wife were of a very serious nature, and it was alleged in the original petition that her injuries would probably result in her death. Subsequently, and upon the eve of trial, plaintiff asked leave and was permitted to amend, and in his amendment alleged that since the filing of the suit his wife had died, as a result of the injuries received by her, and sought to recover damages for her death. It seems from the opinion in the case that the defendant had, at a prior term of the court, secured a continuance of the case, but at that time the wife had not died. When, upon the eve of trial, the plain-

tiff was permitted to file the amendment showing the wife's death, the defendant moved for a continuance in order that it might have an opportunity to refute the contention that the wife's death was the result of the injuries she had received. The trial court overruled the motion, and the defendant was cast in the action, and upon appeal the Court of Civil Appeals affirmed the trial court's action. 43 Tex. Civ. App. 264, 95 S. W. 1118. The appellant sued out a writ of error to the Supreme Court, and Judge Williams, speaking for that court, in disposing of appellant's contention that the trial court was in error in overruling its motion for a continuance, among other things, said:

"While plaintiffs are permitted, under proper conditions, to set up new causes of action by amending their pleadings, the exercise of this right is not to be allowed to work injury to the defendant. He is entitled to a reasonable time in which to make preparation to meet the matters thus alleged against him, just as he is upon the institution of an original action. Railway Co. v. Henning, 52 Tex. 424. Hence an application for continuance for such A purpose is to be regarded as a first application, as it is the first which seeks a continuance of the new cause. For this reason, the allegation of the original petition that the death of Mrs. Groner would probably result from the causes stated, does not affect this cause. A defendant is not required to make preparation to defend an action until it has been brought. It cannot be assumed that the preparation which the defendant had made for the defense of the original action was all that it desired to make, and could make, to meet the new one."

So, in this case, we say that, when the trial amendment was filed by appellee, a new, if not the only, cause of action was then asserted by appellee against it, and, if the Supreme Court's opinion in the Groner Case be correct, appellant, upon the filing of the trial amendment, was entitled to reasonable time in which to make preparation to defend against the case then made by appellee against it as to all of its phases.

[11-13] It is suggested by way of argument in appellee's brief that appellant's motion for new trial in this case failed to disclose that there was any injury or prejudice to it by reason of the court's overruling its motion for continuance, in that the motion failed to disclose that appellant had procured or would be able to procure any further evidence that would tend to defeat or weaken the appellee's cause of action against it, and for that reason the trial court's judgment should be permitted to stand. As to this, we think it will suffice to say that the court's action on the pleadings in the case was not even required to be complained of in the motion for new trial before the court, but, on the contrary, the pleadings in the case and the court's action thereon, otherwise fully

appearing of record, as here, constitute a part of the record proper, and that action, when assigned as error, may be reviewed in this court without being assigned as error in the motion for new trial, and we have already concluded that the permission to file the amendment was, itself, reversible error in this case. But, if it should be held that a motion for new trial on this point was necessary, and that it should show that appellant was injured or prejudiced by the court's overruling its motion for continuance, the answer is that appellant was required to file its motion within two days after the trial, and it ought not to be assumed, we think, as a matter of law or fact, that such time was reasonably sufficient for a showing by appellant that it had procured other evidence that would be advantageous to it upon another trial. It is true motions for new trial may be amended, under leave of the court, and in that way appellant might be said to have had more than two days in which to investigate after the trial, and show the court that the overruling of its motion was injurious to it. In this case, however, the term of the court adjourned in four days after the motion for new trial was filed. It may be that, by extraordinary diligence on its part, appellant might have explored all sources from which evidence in its behalf might have been procured, but, however that may be, we do not believe that, under all the facts in this case, it should be held that appellant was required to make a showing of actual injury by a motion for new trial before it should be heard to complain of the court's action on the pleadings and its motion for continuance in this case.

Appellant's next contention is that the court committed error in admitting certain evidence against it on the trial of the cause, and we are inclined to think that the contention is correct, but, in view of the fact that the case will be reversed for the reasons already stated, it is unnecessary to further indicate our views as to this contention, and it is quite probable that the matter complained of in this connection will not occur upon another trial.

[14] It is next contended by appellant that the judgment in this case is excessive. As we have shown, the amount awarded appellee by the judgment was $1,500 for mental anguish alleged to have been suffered by her because she was prevented from being present at the bedside of her little brother, and rendering him aid during his last moments. Appellee was present at the funeral of the little brother, and therefore the failure to be at his funeral is not an element of damages in the case. The material facts relative to the measure in this case are substantially as follows:

The evidence for appellee was sufficient to show that, if the message in question had been delivered to her on the evening it was

sent from Cleveland in time for her to have caught a "Frisco" train at the town of Hull, which train passed that town going to the city of Houston about 6:20 p. m., she could and would have taken that train, and would have gone by way of the city of Houston, and thence up the Houston East & West Texas Railroad to Cleveland, and that she would have reached Cleveland on that same night at about 10:30 o'clock. The little brother died, as the undisputed testimony shows at 4:40 o'clock the next morning. Therefore, if appellee had reached Cleveland at about 10:30 that night, she would have had the opportunity and privilege of being at the bedside of her little brother for about six hours. The undisputed proof shows that the little fellow, during that period of time, was having convulsions right along, and was practically in the throes of death. The testimony further shows, without dispute, that nothing could have been done for the little fellow other than what was done, either in the way of medical attention or nursing and administering to him. As we have shown, this little brother was a mere baby, about two years of age, and it is fairly to be assumed from this record that he was unconscious during all the time that appellee could have been with him had she reached Cleveland as she would have done had the message been promptly delivered. Appellee's evidence was also to the effect that there was a close attachment between her and this little brother, and that she had, prior to taking the position as telephone operator at Hull, lived at home with the baby and nursed and cared for him. Doubtless appellee bore for this little brother the love and affection which is but natural and usual in sisters, and it was, of course, but natural that she should desire to be present had she known of the little brother's serious illness. It has always been hard for the writer to understand how such disappointments and griefs as this can be measured at all in money, yet the law permits recoveries as compensation for such grief and disappointment, but has never fixed any criterion for measuring such compensation, other than leaving it to the fair and impartial judgment of a jury or the trial court. It is true that our law books are replete with decisions on the question of the measure of damages in such cases, but, in the very nature of things, precedents are of little value in reaching a conclusion in any given case. Each case, it might be said, stands upon its own facts, and has little weight in controlling the amount of damages that may be awarded in another. We frankly concede that $1,500 in this case seems to us to be quite a liberal amount to be awarded the appellee, for the reason, as appears to us, that little consolation or satisfaction could have come to the sister in this case had she been permitted to stand by the bed-

side of the little dying brother and observe him in his helpless and hopeless condition for a period of about six hours. Still, we do not feel that we are the arbiters at this time of this matter, because it is not necessary, since we have already reversed the case, to pass upon this assignment, but prefer to leave it to the trial court or jury upon another trial.

For the reasons indicated, it is ordered that the judgment be reversed, and the cause remanded.